NO. 07-12-00312-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 20, 2013

_____

IN THE INTEREST OF D.S., A CHILD

_____

FROM THE 169TH DISTRICT COURT OF BELL COUNTY;

NO. 249,572-C; HONORABLE GORDON G. ADAMS, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Floyd Gene Slay (Floyd), appeals from the trial court's order modifying the parent-child relationship as to child support. Floyd contends that the trial court abused its discretion in granting the modification because there has been no material and substantial change in either the financial resources of the parties or the needs of the child. Additionally, Floyd contends that the trial court's order of modification is against public policy. We disagree and will affirm the judgment of the trial court.

Factual and Procedural Background

Floyd and Crystal Slay (Crystal) were divorced in Virginia in 2009. At the time of the divorce and at the time of the hearing on the motion to modify, both were serving members of the United States Army. At the time of the hearing, both were domiciled

and residing in Texas. The divorce decree recites that there was one child born of the marriage, D.S., the subject of the modification action. The 2009 divorce decree affirmed, ratified, approved, and incorporated a Separation Agreement that the parties had signed in 2008.[1] The decree did not provide for a specific amount of child support for D.S.; rather, the agreement and decree provided that the parties would divide the child's necessary expenses. Additionally, the agreement and decree did not provide for any standard visitation on a regular basis; rather, this was also left to the agreement of the parties. As those types of agreements are wont to do, the parties' agreement disintegrated, and, by 2011, the parties were not agreeing on either support or visitation.

As a result of the perceived lack of agreement on the support and visitation issues, Crystal filed a motion to modify the out-of-state order, seeking modification of support and, by the date of trial, a modification of the terms of possession and access to the child. Floyd filed an original answer and a petition to terminate the parent-child relationship between himself and D.S.

The trial court entered temporary orders on June 23, 2011, granting temporary support pursuant to standard guidelines and orders setting forth terms of possession

---

[1] Floyd testified that he discovered by way of DNA testing in 2007—two years before the couple's divorce decree—that D.S. was not his biological child. Despite being aware of that fact and learning the identity of D.S.'s biological father, Floyd entered into the Separation Agreement in which he agreed to "share joint legal custody [of] the minor child" and "retain full parental rights and responsibilities." Further, we observe that, under the Uniform Parentage Act, as adopted by Texas, Floyd is deemed the presumed father of D.S. because Floyd was married to Crystal at the time D.S. was born in 2000. See TEX. FAM. CODE ANN. § 160.204(a)(1) (West 2008). This presumption of paternity may be rebutted by one of two methods: (1) an adjudication under Subchapter G or (2) the filing of a valid denial of paternity by a presumed father in conjunction with the filing by another person of a valid acknowledgment of paternity as provided by Section 160.305. Id. 160.204(b). The record before us does not suggest that either method was undertaken in the instant case.

and access to the child pursuant to standard possession guidelines. Floyd's action to terminate the parent-child relationship was based upon Texas Family Code section 161.005(c). See TEX. FAM. CODE ANN. § 161.005(c) (West Supp. 2012).[2] A pre-trial hearing on the issue pursuant to Texas Family Code section 161.005(f) was held and the trial court denied the request.[3] This was finalized by the trial court's order of denying the termination on March 17, 2012. No appeal was taken from the denial.

On June 23, 2011, the trial court heard the final hearing on Crystal's motion to modify support and the terms of possession and access to the child. The only testimony presented at the hearing was that of Floyd and Crystal. At the conclusion of the hearing, the trial court took the matter under advisement. On February 1, 2012, the trial court issued a memorandum ruling granting the modification and set the child support at $880 per month. The trial court also noted that, by agreement of the parties, a standard possession order would be entered. The memorandum ruling was confirmed by a final order entered on May 17, 2012. This appeal followed.

Through two issues, Floyd contends that the trial court's ruling—that a material and substantial change in the circumstances or financial needs of the child necessitates the modification—was an abuse of discretion and, further, that the order entered by the trial court is against public policy. We disagree and will affirm.

---

[2] Further reference to the Texas Family Code will be by reference to "section ____" or "§ ____."

[3] The trial court's ruling at the conclusion of the required preliminary hearing was that the factual basis of Floyd's claim did not fall within the purview of the statute because Floyd knew of the paternity at the time the final divorce was rendered.

Modification of Support Obligation

Standard of Review

As an appellate court, we review the decision of the trial court to modify child support under an abuse of discretion standard. See In re C.C.J., 244 S.W.3d 911, 917 (Tex.App.—Dallas 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding principles or acts in an arbitrary and unreasonable manner. See Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex.1985). When conducting a review for abuse of discretion, legal and factual sufficiency of the evidence issues are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion. See In re C.C.J., 244 S.W.3d at 917. If our review of the evidence finds some probative and substantive evidence supporting the trial court's decision, there is no abuse of discretion. See id.

Applicable Law

An existing child support order may be modified if the circumstances of the child or a person affected by the order have materially and substantially changed since the entry of the previous order. See § 156.401(a)(1) (West Supp. 2012). When making a determination regarding a material and substantial change of circumstances, we are directed to examine and compare the circumstances of the parents and the minor child at the time of the initial order with those circumstances existing at the time of the modification. See id. (citing, inter alia, In re J.R.D., 169 S.W.3d 740, 743–44 (Tex.App.—Austin 2005, pet. denied)). However, the breadth and depth of this comparison is the subject of much discussion in the cases. See, e.g., Rooney v.

4

Rooney, No. 14-10-01007-CV, 2011 Tex. App. LEXIS 6682, at *9 (Tex.App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.) (observing that a court's decision regarding change of circumstances is not a rigid or definite rule-driven decision but is fact-specific). Further, the moving party may present evidence in the form of how much expenses had increased since the divorce and satisfy the requirement of proving a material and substantial change in conditions. See In re J.A.R., No. 12-11-00025-CV, 2011 Tex. App. LEXIS 6759, at *11–12 (Tex.App.—Tyler Aug. 24, 2011, no pet.) (mem. op.) (concluding that mother not required to present evidence of financial circumstances at time of divorce because her testimony was presented in terms of how her expenses had changed since the divorce). The movant has the burden to prove the required change of circumstances. See In re C.C.J., 244 S.W.3d at 918.

In the case before the Court, Floyd requested findings of fact and conclusions of law. See TEX. R. CIV. P. 296.[4] The record reflects that these were not filed by the trial court. Following the initial request, Floyd filed a reminder of past due findings of fact and conclusions of law. See Rule 297. The record does not reflect that the requested findings of fact and conclusions of law were filed. In such a situation, the failure of the trial court to file the requested findings and conclusions is not necessarily harmful error if the record before us affirmatively shows that the complaining party suffered no injury. See In re S.R.O. 143 S.W.3d 237, 242 (Tex.App.—Waco 2004, no pet.) (citing Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam)).[5] Where, as here, no findings of

---

[4] Further reference to the Texas Rules of Civil Procedure will be by reference to "Rule ___."

[5] Floyd does not contend that he suffered any injury as a result of the trial court's failure to file findings of fact and conclusions of law.

fact or conclusions of law are filed, the reviewing court must presume that the trial court made such findings and conclusions as are necessary to support the judgment. See Johnson v. Graze Out Cattle Co., No. 07-10-0518-CV, 2012 Tex. App. LEXIS 5790, at *8 (Tex.App.—Amarillo July 18, 2012, no pet.) (mem. op.) (citing Black v. Dallas City Child Welfare Unit, 835 S.W.2d 626, 630 (Tex. 1992)).

Analysis

Floyd couches his issue in terms of the trial court's decision being an abuse of discretion and, as such, this argument will be viewed as contending that the evidence was insufficient to support the trial court's judgment. The sufficiency of the evidence inquiry, in an abuse of discretion standard of review, is a two prong test. See In re T.D.C., 91 S.W.3d 865, 872 (Tex.App.—Fort Worth 2002, pet. denied) (op. on reh'g.). First, we inquire, did the trial court have sufficient information upon which to exercise its discretion? Id. Second, did the trial court err in its application of discretion? Id.

Regarding the first inquiry, the evidence demonstrates that Floyd had paid expenses of approximately $300 per month toward raising the child prior to the breakdown in communication. Further, the record shows that, prior to sometime in late 2010, the parties were still attempting to work out any problems they had about support. However, following that time, the parties' ability to communicate with each other became very limited. Subsequently, Floyd ceased making any type of regular support payments. Additionally, Crystal testified that at the time of the original agreement and decree, she was living in base housing. However, upon moving to Fort Hood, she was unable to acquire base housing. Crystal's uncontradicted testimony was that the wait

6

list for on base housing was over a year. As a result of this situation, Crystal purchased a home. Though the amount of the mortgage payment was not specified in the testimony, the fact that it was more expensive than on base housing was never contested. What Crystal was to do in the year waiting for on base housing to come open is something that Floyd never mentioned or addressed. Floyd contends that this change in circumstances should be given no probative value and cites the Court to In re J.A.H. for the proposition that Crystal's purchase of a home was simply a change of lifestyle and not a material or substantial change in circumstances. See 311 S.W.3d 536, 542 (Tex.App.—El Paso 2009, no pet.). The facts of J.A.H. are clearly distinguishable from the facts of this case. In J.A.H., the movant, the mother, remarried and purchased a home twice as expensive as the former home to fit her new family. Id. Accordingly, the court in J.A.H. found this not to be a change of circumstances. Id. In our case, Crystal bought a home when faced with a one-year delay in her ability to acquire on base housing. Therefore, we do not find J.A.H. to be controlling on the issue of change of circumstance as it pertains to Crystal.

In addition to the change in Crystal's circumstances, the trial court heard testimony about the change in Floyd's circumstances. At the time of the agreement and decree, Floyd was responsible for raising his biological daughter and was paying support for his biological son. At the time of the hearing on this case, the son was 19, and Floyd was no longer paying support for him. The daughter had turned 18 but was still in high school, and Floyd made some contributions to the cost of raising her but was not paying a regular amount of child support.

7

Finally, all parties agreed that, at the time of the decree, the child, the subject of the case at bar, was eight years old. By the date of the hearing before the trial court, the child was 11 years old. The child was active in various sports, and Crystal was bearing the expense of all of those activities. Prior to the separation, the child had been active in sports; however, the testimony reflected that Floyd had coached most of the child's teams and the child's participation did not always carry costs. Further, both Floyd and Crystal agreed that the expense of raising the child had increased as the child got older.

In the final analysis, the record shows an agreement that was no longer workable, and the result was that Floyd was paying sporadically and in amounts that were essentially left to his discretion. The evidence shows that the circumstances of both Crystal and Floyd had changed. Finally, the record demonstrates clearly that the cost of raising the child had increased, a point Floyd does not contest. Based upon all of these factors, we find that the trial court did have sufficient information upon which to make a decision. See In re T.D.C., 91 S.W.3d at 872. Under this method of analysis, this finding is a finding that the evidence was sufficient to support the decision of the trial court. Id. Additionally, we infer that the trial court made the findings and conclusions necessary to support its judgment. See Johnson, 2012 Tex. App. LEXIS 5790, at *8 (citing Black, 835 S.W.2d at 630).

Our second inquiry is whether the court erred in the application of its discretion. See id. Inasmuch as the evidence supports a material and substantial change of circumstances, the trial court followed the guidelines of the Family Code in granting the motion to modify. See § 156.401(a)(1). Therefore, the trial court did not abuse its

8

discretion in modifying the child support order. See Downer, 701 S.W.2d at 241-42. Accordingly, Floyd's first issue is overruled.

## Public Policy Issue

Floyd's second issue argues that the trial court's order was against public policy. Floyd's issue is premised on the questionable assertion that Crystal is allowed to get support for the child from two sources, Floyd and the biological father. The record reflects that the biological father had only made a few sporadic gifts to the child and was not making any regular support payments. Further, Floyd posits that allowing this to occur is against public policy. This legal assertion is without any citation to legal authority. Floyd attempts to avoid this deficiency by asserting that this question is one presented to the Court on first impression. Yet, the discussion of the issue does not even guide the Court to any authority or substantive analysis that would allow us to reverse the trial court for its decision. As such, the issue is not properly briefed. See TEX. R. APP. 38.1(i). We decline the invitation to speculate. Floyd's second issue is overruled.

## Conclusion

Having overruled both of Floyd's issues, we affirm the judgment of modification entered by the trial court.

Mackey K. Hancock
Justice

9