

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00034-CV

---

**IN THE MATTER OF THE MARRIAGE OF JORDIN HAYES BRIDENTHAL
AND WARREN FREDRICK BRIDENTHAL AND
IN THE INTEREST OF L.B., A CHILD**

---

On Appeal from the 169th District Court
Bell County, Texas
Trial Court No. 322,883-C, Honorable Cari Starritt-Burnett, Presiding

---

August 17, 2023

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

This is an appeal of a divorce decree rendered following a September 13, 2022 final hearing.[1]   Through a single issue, Appellant Jordin Hayes Bridenthal (Mother) challenges that portion of the decree designating Appellee Warren Fredrick Bridenthal

---

[1] This appeal was originally filed in the Third Court of Appeals and was transferred to this Court by a docket-equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.  In the event of any conflict, we apply the transferor court's case law.  TEX. R. APP. P. 41.3.

(Father) as the parent with the exclusive right to designate the primary residence of the parties' son, L.B.[2]  Finding no abuse of discretion, we affirm.

Through a single issue, Mother argues the "trial court's finding of fact and/or conclusion of law in its final judgment that the note was invalid is legally insufficient."  We are unclear what "note" Mother is referring to, but we note Mother argues elsewhere the "custody award to [Father] was legally insufficient."  From what we can discern, Mother is arguing the trial court abused its discretion designating Father as the parent with the exclusive right to determine L.B.'s residence because no evidence supports the court's exercise of discretion.

Mother's appeal primarily tests the evidence supporting two of the trial court's findings of fact:

> 14. [Mother] interfered with [Father's] periods of possession to [the child].
>
> 15. It is in the best interest of the child that [Mother] and [Father] be appointed joint managing conservators of the children [sic] and that [Father] have the right to designate the child's primary residence.

In cases involving the best interest of the child,[3] including questions of conservatorship, possession, and access, sufficiency of the evidence is not an independent ground of error but is one factor relevant to the appellate court's assessment of the trial court's exercise of discretion.  *Fish v. Lebrie*, No. 03-09-00387-CV, 2010 Tex. App. LEXIS 9791, at *5–6

---

[2] The child was age seven at the time of final hearing.

[3] *See* TEX. FAM. CODE ANN. § 153.002.  For determining the best interest of a child, courts consider a variety of factors, including the nine considerations identified by the Supreme Court of Texas in *Holley v. Adams*, 544 S.W.2d at 371–72 (Tex. 1976).  Moreover, not all factors apply in every case.  *Pore v. Ellis*, No. 03-20-00550-CV, 2021 Tex. App. LEXIS 8853, at *24 (Tex. App.—Austin Nov. 3, 2021, no pet.) (mem. op.).

(Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.). We do not find a trial court abused its discretion simply because this Court might have decided the issue differently. *Zeifman v. Michels,* 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Rather, reversing the trial court's determination of the child's residency as an abuse of discretion will only occur if the evidence or law shows the court acted unreasonably, arbitrarily, or without reference to guiding principles. *In re J.R.D.,* 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied).

When conducting this review, we observe that suits affecting the parent-child relationship are "intensely fact driven" and require courts to balance numerous factors. *Norman v. Martin,* No. 03-17-00704-CV, 2019 Tex. App. LEXIS 2396, at *15–16 (Tex. App.—Austin Mar. 28, 2019, no pet.) (mem. op.) (citing *Lenz v. Lenz,* 79 S.W.3d 10, 19 (Tex. 2002)). The trial court is best situated to observe witnesses' demeanor and other indicia that cannot be discerned from the appellate record. *Billisits v. Billisits,* No. 03-21-00358-CV, 2023 Tex. App. LEXIS 1193, at *4 (Tex. App.—Austin Feb. 24, 2023, no pet.) (mem. op.). Accordingly, we will generally defer to the trial court's decision so long as it is supported by substantive and probative evidence. *Id.* at 4–5.

The only witnesses at final hearing were Mother and Father. At one time, both lived in Texas, but Mother moved to California while the divorce proceeding was pending. Father lives in Oklahoma. Father and Mother both have time consuming careers, with Mother working as a soil technician and Father serving in the military. Both have plans for L.B.'s care when work requires their absence. Father and Mother each cohabitate with a partner outside of marriage.

Under the temporary orders that were signed during this case, both parties were ordered to be joint managing conservators, with the child's primary residence to be determined by Mother, exclusively, within Bell County, Texas, or Riverside County, California. Upon proof of a COVID vaccination, the child's paternal grandmother could have possession of the child one weekend per month with advance notice to Mother. "No other COVID restrictions on either party."

Several provisions granted Father periods of possession with the child. Relevant here, the trial court ordered that when the parents lived more than 100 miles apart, Father would have the right to possession of the child every year during spring break, to begin when the child was dismissed from school. Moreover, if Father did not give Mother written notice before April 1, he would have the right to possession of the child during the summer "for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year." Each parent was permitted to designate "any competent adult to pick up and return the child, as applicable."

Mother testified she "was willing to compromise and do whatever it took because our kid needs to see his dad." The record, however, evidences Mother's inflexibility when Father attempted to exercise periods of possession. Here are a few examples:

- During Christmas 2021, and in contravention of the temporary order's language that no COVID requirements restricted the parties (except for permitting the grandmother's separate periods of access), Mother denied Father access to the child because Father visited family members who were not vaccinated against COVID-19.

- Mere days before the child's spring break (and the period for Father's period of access to the child), Mother withdrew the child from school to begin a move from Texas to California. Mother then denied Father access to the child because "it was no longer his Spring Break." Mother agreed with the statement that it was in the child's best

4

- interest to ride across the country with her rather than spending the period with Father (who had offered to fly the child to California).

- When Father attempted to exercise his summer period of possession, Mother would not release the child until after 6:00 p.m. on June 15, 2022, because "it's in the paperwork, the court order." Notwithstanding Despite their residences being several states away, Mother refused to allow Father to designate another adult to pick-up the child, despite the language in the court order permitting Father to do so.

- Also regarding Father's summer period of possession, when it was necessary for the child to fly unaccompanied from California, Mother alleged the child became so distraught at the airport that "the airline would no longer allow him on the plane." This meant Father's period of possession did not begin per the order. When, at the end of the (shorter) possession period, Father took the child to the airport to fly unaccompanied to California, Father did not witness the child exhibiting the same behaviors Mother said she saw.

On appeal, Mother's brief essentially attempts to credit the evidence favorable to her and to explain away the evidence suggesting she had interfered with Father's periods of possession. But we do not sit as a jury; the trial court is the sole judge of the witnesses' credibility. *See Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.) ("The trial court is in the best position to observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record.").

Regarding other best-interest factors, Father testified he works 12-hour days, and plans to remain in the military for another eight and a half years so he can attain twenty years of service. Father said he is not "deployable" for the next two years, and that he and his fiancée occupy a three-bedroom home in Elgin, Oklahoma. Photographs admitted into evidence depicted the child's bedroom at Father's house. Testimony showed the fiancée is a registered nurse, working ten-hour shifts, Monday through

Thursday; she could care for the child if Father's military service kept him away overnight. Alternatively, a friend "up the street" would babysit. Father testified he planned to enroll the child in childcare, either in Elgin or on the Army post. Although admitting to being an alcoholic, Father said he had remained sober for 20 months.

Because some evidence of a substantive and probative character exists to support the trial court's decision, we conclude the trial court did not err in finding it is in the child's best interest to designate Father as the joint managing conservator with the exclusive right to determine the child's primary residence. Mother's sole issue is overruled.

## Conclusion

Having overruled Mother's sole issue on appeal, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice